[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON
CT Page 12282 COUNTERCLAIM
This is a counterclaim by counterclaim plaintiff, Angelo Squillante, to collect an alleged unpaid balance of a debt evidenced by a promissary note. The counterclaim defendants, Salvatore and Jacqueline Garofalo have pled two special defenses: first, that the debt has been paid in full and, second, that the claim is barred by the statute of limitations.
The facts are as follows. In 1978 General Sanitation, a company owned by Nunzio and Angelo Squillante, sold certain assets to S R Sanitation, a company owned by Salvatore and Jacqueline Garofalo. The debt was secured with a promissary note in the amount of $145,914.12, with General Sanitation and the Connecticut Bank and Trust company (CBT) named as payees. CBT was a joint payee under the 1978 note as a security device for indebtedness owed by General Sanitation. CBT released its interest in the 1978 note in February 1983, leaving General Sanitation as the sole payee. Since General Sanitation ceased operations after the 1978 sale, payments on the 1978 debt were made by the Garofalos to Angelo and/or Nunzio Squillante. It is undisputed that the amount remaining on the 1978 note on January 31, 1983, after CBT was paid, was $80,869.60.
In 1983 S R Sanitation sold its assets to several buyers. The Squillantes created Admiral Trucking, a new corporation, to acquire a portion of those assets. Admiral Trucking gave its promissary note dated February 1, 1983, in the amount of $770,664.62 (the "1983 $770 K note") for those assets. This note was guaranteed by Edward J. Halloran and Angelo Squillante.
The 1978 note for $145,914.12 was owned by Angelo and Nunzio Squillante, as successor to General Sanitation. Since Halloran had an interest in Admiral Trucking but no interest in the 1978 note, it was not feasible to offset the two obligations. Halloran would have had his potential liabilities reduced by an asset of the Squillantes. To address these differing ownership interests, the remaining payments due under the 1978 note were to be held in escrow by the Garofalos.
In 1987 the 1983 $770 K note was amended to reflect a reduction in principal. By its terms the amended note was to be paid in full by March 20, 1993. CT Page 12283
The 1978 note required monthly payments of $2,310.56. Until CBT was paid for its debt in 1983, regular monthly payments were made by S R Sanitation as reflected in the business records maintained before S R sold its assets. The parties agree that the remaining principal balance of the 1978 note was $80,869.60 as of January 31, 1983. The instant dispute concerns the payments made thereafter.
With the sale of S R Sanitation to Admiral Trucking resulting in the 1983 $770 K note, the Garofalos suspended payments to the Squillantes under the 1978 note. An interest bearing escrow account was opened by Salvatore Garofalo into which he was to deposit the $2,310.56 monthly payments which were due the Squillantes under the 1978 note. This escrow account was to stand as collateral for the 1983 770 K note until the 1983 note was paid, that is until March 20, 1993.
As of May 7, 1985 with regular monthly deposits the Garofalos would have escrowed $60,074.56 (26 months @ $2,310.56). As of that date the escrow account showed a balance of $10,338.16.
On July 26, 1994, suit was brought by the Garofalos to collect the balance owed by the Squillantes on the 1983 $770 K note. The instant counterclaim was filed in that action. A decision was rendered in the case in chief on October 16, 1995, in which the fact finder found $17,236.93 still due the Garofalos on the 1983 $720 K note. That amount plus interest and cost were awarded the plaintiffs, Salavatore and Jacqueline Garofalo Angelo Squillante now counterclaims for the balance due on the 1978 note.
The Garofalos contend that the 6 year statute of limitations, CGS § 52-576, started running on the 1978 note in February, 1983 when the last payment was claimed to have been paid or December 25, 1985 when the final payment was due. As to the December 25, 1985 due date, since the 1978 note stood as collateral against the payment of the 1983 $770 K note, Squillante could make no claim for payment of the balance remaining on the 1978 note until the 1983 $770 K note was paid in full. As of October 16, 1995, $17,236.93 was still found to be outstanding on the 1983 note. Accordingly the Garofalos cannot prevail on their first special defense premised on the statute of limitations claim. CT Page 12284
As to the December 25, 1985 date, the date the Garofalos claim as the date on which they made the last and final payment on the 1978 note, the burden of proof of payment rests on the Garofalos. They must establish payment by a preponderance of the evidence. The only documentation presented by the defendants are two canceled checks, ledger cards with typed in entries and inked entries. One canceled check is dated November 27, 1985 in the amount of $2,310.56. The other dated December 24, 1985 is also in the amount of $2,310.56. Both are made out to the Squillantes, Nunzio and Angelo. The ledger sheet, captioned Distribution Ledger, carries the account name of CBT and has a series of columns captioned "old balance", "Date", "Reference", "Debt", "Credit", "Balance". The ledger starts off with a balance of $150,186.40 as of August 30, 1980. Each and every month from August 30, 1980 to January 31, 1983 monthly entries are made under each of these captions until the CBT debt is paid. The balance remaining after the January 31, 1983 payment was shown as $80,869.60, the amount still due the Squillantes. Jacqueline Garofalo kept the books. The reason she gave for the penned in configuration of the subsequent entries on the ledger was that she no longer had the bookkeeping machine used for the CBT payment entries.
An examination of the inked entries reveal that each time the year 1983 appears in these entries, the three (3) has been inked over another number and is darker than the first three numbers. The penned entries on the front side have writings which do not correspond to amounts entered because there are conflicting dates. According to the Garafalos the amounts of $5,000, $10,000 and $41,000 shown on the ledger represent lump sums the Garofalos gave the Squillantes on the 1978 note during 1984, when they were approached by the Squillantes for money because of business problems. At that time the Garofalos were still owed a significant amount of money by the Squillantes on the 1983 770 K note.
The reason for escrowing the payments by the Garofalos on the 1987 note was so that the Garofalos would have collateral should the Squillantes default on the 1983 $770 K note. On April 29, 1983 Angelo Squillante was sent a letter by the Garofalos' attorney reminding him that a life insurance policy on Angelo's life was to have been provided as security for payment of the 1983 $770 K note and that that had not been forthcoming. Thus, the only collateral the Garofalos had on the 1983 $770 K note was the amount owed them by the Squillantes on the 1978 note. CT Page 12285
Angelo Squillante and the Garofalos continued to be involved in business transactions after 1983. A letter dated July 17, 1987, from the Garofalo's attorney instructed the Garofalos to deliver a check in the amount of $49,545.10 to Admiral Trucking. That amount represented Admiral's portion of the Trash Away prepayment. This was the payment which reduced the balance of the 1983 $770 K note, resulting in an amended note for $393,000 dated May 20, 1987. A transaction identified by Angelo Squillante as the P M Refuge Inc. transaction involving the receipt of $10,000 by the Squillantes from the Garofalos, took place in 1984. This payment was received on December 27, 1984. However, since Angelo Squillante had no documentation as to that transaction, the receipt of the $10,000 for which the Garofalos claim credit against the 1978 note is not being contested by Angelo Sqillante.
This court cannot ignore the fact that the Garofalos were long time business people who ran a significant trash hauling business for years and who knew how to maintain business records. The distribution ledger with its helter skelter entries, write-overs and undated amounts falls well below a credible record of payments. Nor do we find it credible that the Garofalos would substantially reduce their only collateral on the 1983 $770 K note before it was paid.
This court finds that the Garofalos have failed to prove full payment of the 1978 note. After allowing for the two $2,310.56 checks and the $10,000 payment which Squillante does not contest, there is determined to be an unpaid balance of $66,248.48 on the face value of the 1978 note.
Under the escrow plan the amounts deposited in the escrow account at the South Windsor Bank and Trust Company would have earned compound interest which this court finds Squillante is entitled to.
Under the terms of the 1978 note provision is made for reasonable attorney fees which this court will allow.
The court will hold a hearing to determine the amount of the compound interest due and the amount to be allowed as reasonable attorney fees.
Interest under the provisions of C.G.S. § 37-3a is CT Page 12286 disallowed as the debt was not payable until the 1983 $770 K note was paid. Part of that note still remains unpaid.
Judgment may enter in favor of the counterclaim plaintiff Angelo Squillante against the counterclaim defendants Salvatore and Jacqueline Garofalo in the amount of $66,248.48 together with an amount for compound interest and reasonable attorney fees to be determined at a hearing to be scheduled by the court forthwith.
Hennessey, J.